**ESSEX INSURANCE COMPANY,**
Plaintiff,

v.

**WILLIAMS STREET CENTER, a Colorado corporation, Rick E. Mohnssen, Shelby Read, Danielle Read, and Alexandra Read, by and through their mother and next friend, Darlene Read, Darlene Read, individually, and Betty Read Behrns, Defendants.**

Civ. A. No. 93–F–646.

United States District Court,
D. Colorado.

Feb. 28, 1994.

John M. Seebohm, Tilly & Graves, P.C., Denver, CO, for plaintiff.

Terryl R. Gorrell, Martha E. Cox, Moye, Giles, O'Keefe, Vermeier & Gorrell, Scott Jurdem, Karen M. Zulauf, Buchanan, Jurdem & Zulauf, P.C., Terri Harrington, Harv Holtzman, Denver, CO, Ed Blizzard, Williams, Blizzard & McCarthy, Houston, TX, for defendants.

## ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

SHERMAN G. FINESILVER, Chief Judge.

### I. INTRODUCTION

This case involves questions of insurance coverage for an operator of a halfway house for criminal offenders. The underlying facts involve an escapee from the halfway house who fled across state lines and ultimately murdered the manager of a restaurant in Texas. Plaintiff seeks a declaratory judgment that it is not liable under the terms of the insurance contract it issued to Williams Street Center and its Executive Director, among others. This matter comes before the Court on Plaintiff's *Motion For Partial Summary Judgment* and Defendants Williams Street Center and Rick E. Mohnssen's *Motion For Summary Judgment.* These motions have been fully briefed by the parties. Jurisdiction is based on 28 U.S.C. §§ 1332 and 2201. For the reasons set forth below, Plaintiff's motion is DENIED and Defendants Williams Street Center and Rick E. Mohnssen's motion is GRANTED.

### II. STANDARD

Granting summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Raymond v. Mobil Oil Corp.,* 983 F.2d 1528, 1534 (10th Cir.1993); *Ash Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991); *Metz v. United States,* 933 F.2d 802, 804 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 416, 116 L.Ed.2d 436

(1991); *Continental Casualty Co. v. P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991). A genuine issue of material fact exists only where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 429 (10th Cir.1990). Only disputes over facts that might affect the outcome of the case will properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Fostvedt v. United States, I.R.S.,* 824 F.Supp. 978, 982 (D.Colo.1993).

In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the party opposing the motion. *Concrete Workers v. City and County of Denver,* 823 F.Supp. 821, 828 (D.Colo.1993). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.,* 933 F.2d 891, 892 (10th Cir.1991); *Mountain Fuel Supply v. Reliance Ins. Co.,* 933 F.2d 882, 889 (10th Cir.1991).

In a motion for summary judgment, the moving party's initial burden is slight. In *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986), the Supreme Court held that the language of rule 56(c) does not require the moving party to show an absence of issues of material fact in order to be awarded summary judgment. Rule 56 does not require the movant to negate the opponent's claim. *Id.* at 323, 106 S.Ct. at 2552–53. The moving party must allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.*

Once the movant has made an initial showing, the burden of going forward shifts to the opposing party. The nonmovant must establish that there are issues of material fact to be determined. *Id.* at 322–23, 106 S.Ct. at 2552–53. The nonmovant must go beyond the pleadings and designate specific facts showing genuine issues for trial on every

element challenged by the motion. *Tillett v. Lujan,* 931 F.2d 636, 639 (10th Cir.1991). Conclusory allegations will not establish issues of fact sufficient to defeat summary judgment. *McVay v. Western Plains Serv. Corp.,* 823 F.2d 1395, 1398 (10th Cir.1987).

In reviewing the evidence submitted, the court should grant summary judgment only when there is clearly no issue of material fact remaining. In *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11, the Court held that summary judgment should be granted if the pretrial evidence is merely colorable or is not significantly probative. In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court held that summary judgment is appropriate when the trial judge can conclude that no reasonable trier of fact could find for the nonmovant on the basis of evidence presented in the motion and the response. *Id.* at 587, 106 S.Ct. at 1356.

## III. FACTUAL BACKGROUND [1]

### A. The Policy

Essex Insurance Co. issued an insurance policy numbered 3AB5247 [2] to Defendants Williams Street Center and Mohnssen, to be effective from March 25, 1989 to March 25, 1990. The policy contained general liability coverage (setting forth Coverages A and B for bodily injury and property damages), and professional liability coverage (Coverage P). The policy is subject to various other exclusions and endorsements. The policy contains a Special Provisions Endorsement pursuant to which it is agreed that certain special provisions apply to the policy. Among these provisions is one entitled "Assault and Battery Exclusion", which reads as follows:

It as agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

---

1. The facts recited herein are taken from the parties' pleadings.

2. The parties have agreed on the policy to be interpreted by the Court on these cross-motions

for summary judgment, and each of the opening briefs contains an identically page-numbered Exhibit A, which is the policy. This order refers simply to the "Policy" when citing its provisions.

*Policy at 12.*

Essex argues that this provision bars defense and/or coverage of the underlying action in state court.

When originally issued, the policy also contained a "Hiring/Supervision Exclusion". That provision, contained in Form ESX–63 (10/86), stated:

IT IS UNDERSTOOD AND AGREED THAT CLAIMS, ACCUSATIONS, OR CHARGES OF NEGLIGENT HIRING, PLACEMENT, TRAINING OR SUPERVISION ARISING FROM ACTUAL OR ALLEGED ASSAULT OR BATTERY ARE NOT COVERED AND NO DUTY TO DEFEND ANY INSURED FROM SUCH CLAIMS, ACCUSATIONS OR CHARGES IS PROVIDED.

*Policy at 20.*

This exclusion, however, was deleted pursuant to Endorsement # 1 issued May 19, 1989, effective as of the date of the policy's issuance. The Endorsement stated, in relevant part, the following:

It is hereby agreed and understood that the following forms changes are endorsed to the above-mentioned policy:

Form ESX–63 (10/86) is deleted.

Form L6112 (3/81) is deleted.

Form ESX–44 is replaced with revised ESX–44 (7/86).

\*   \*   \*   \*   \*   \*

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated.

*Policy at 8.*

Defendants in this action contend that the "Assault and Battery" exclusion does not apply to the cause of action in the underlying case, and that the fact that the "Hiring/Supervision Exclusion" was deleted from the policy means that coverage for negligent supervision (their asserted cause of action) is indeed covered by the policy.

Defendants also contend that the professional liability coverage provided for in the policy applies to the underlying state cause of action. The "Professional Liability" language reads:

The Company will pay of behalf of the INSURED all sums which the INSURED shall become legally obligated to pay as DAMAGES because of injury arising out of any negligent act, error or omission in rendering or failing to render professional services, during the policy period, of the type described in the Description of Hazards shown above, whether committed by the INSURED or by any person for whom the INSURED is legally responsible.

*Policy at 26.* The Description of Hazards defines the type of professional services covered by the policy as "Halfway Houses." *Id.*

### B. The Underlying Action

Defendants Shelby Read, Danielle Read, Alexandra Read, Darlene Read and Betty Read Behrns have a cause of action in Denver District Court against Williams Street Center,[3] Case No. 91–CV–7786 (the "Read Family" action). They seek damages from the Center based on claims for the wrongful death of Robert Dorsey Read. These Defendants contend that Robert Read was killed by Kenneth Stephen Staley, who was a resident at Williams Street Center in Denver, Colorado. Kenneth Staley left Williams Street Center and went on a "crime spree" that culminated in a hostage-taking and the murder of Robert Read at a Steak and Ale Restaurant in Fort Worth, Texas. Robert Read died on October 15, 1989. These Defendants' Claim For Relief alleges that Williams Street Center and Rick Mohnssen "owed a duty to protect against reasonably foreseeable death or injury to unsuspecting innocent persons"; that "Defendants were negligent in failing to act reasonably"; and that "[a]s a direct and proximate result of the defendants' negligence, Robert Dorsey Read was murdered, and the plaintiffs suffered both economic and non-economic losses in an amount to be determined by the trier of fact." *Amended Complaint And Demand*

---

3. Defendant Rick E. Mohnssen was dismissed from the state action.

*For Jury Trial, Read, et al. v. Williams Street Center, et al.,* Case No. 91–CV–7786.[4]

### C. This Action

Essex filed this action seeking a declaration that the policy's "Assault and Battery" exclusion precludes coverage for defense or indemnity with regard to the Read Family action.[5] Plaintiff contends that the "Assault and Battery Exclusion" included in the Special Provisions Endorsement applies so as to exclude coverage requiring it to defend and indemnify Defendants for the underlying lawsuit in state court. *See Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1090 (Colo.1991). Defendants contend that the "Assault and Battery Exclusion" is not the appropriate provision for determining whether coverage exists with regard to the allegations of the underlying complaint in the state action. Rather, they allege that the "Hiring/Supervision Exclusion" provided when the policy was issued *would have* or *might have* provided an exclusion covering the allegations against Williams Street Center and Mohnssen in the state case, had that provision been in force. As noted above, Form ESX–63 (10/86) containing that provision was deleted pursuant to an endorsement attached May 19, 1989, "Endorsement # 1", and the deletion was retroactive to the date of issuance of the policy.

Defendants contend that 1) the underlying allegations in the state case are negligent supervision claims such as would have been excluded under the provisions of Form ESX–63 had it been in effect, and 2) since the exclusion was not in effect, coverage for such claims is provided in the policy. Defendants also contend that the Professional Liability coverage applies to negligence claims arising from professional services rendered in operating a halfway house.

4. The parties have filed a *Stipulated Motion For Dismissal With Prejudice (Of Essex' Claims Against Darlene Read, Her Children, And Betty Read Behrns Only )*. They assert that the underlying state case has been settled as to those parties and claims. This motion will be granted.

## IV. ANALYSIS

### A. Insurance Principles

■ Insurance policies are construed by courts in such a way as to carry out the parties' intentions. *United Bank of Pueblo v. Hartford Accident & Indemnity Co.,* 529 F.2d 490, 494 (10th Cir.1976). "Under Colorado law, insurance contracts are construed according to the general rules of construction applicable to contracts and according to the intent of the parties." *City of Northglenn v. Chevron U.S.A., Inc.,* 634 F.Supp. 217, 222 (D.Colo.1986). "The intent of the parties is determined by the contract language itself. Only if the terms of the agreement are ambiguous does extrinsic evidence become relevant." *Id.* Unambiguous contracts should be enforced according to their terms. *Kane v. Royal Ins. Co.,* 768 P.2d 678, 680 (Colo. 1989); *Marez v. Dairyland Ins. Co.,* 638 P.2d 286, 288–89 (Colo.1982). To determine whether an insurance policy is ambiguous, the language of the policy should be construed according to the plain language, as reflected in all provisions of the policy. *Buell v. Security Gen. Ins. Co.,* 987 F.2d 1467, 1469 (10th Cir.1993). All provisions of a policy must be construed together. *Id.* at 1469. If provisions within an insurance policy conflict, they are to be construed against the insurer and in favor of the insured. *Id.* at 1470.

"In order to avoid policy coverage, an insurer must establish that the exemption claimed applies in the particular case, and that the exclusions are not subject to any other reasonable interpretations." *Hecla Mining Co.,* 811 P.2d at 1090 (citing *City of Johnstown v. Bankers Standard Ins. Co.,* 877 F.2d 1146, 1149 (2nd Cir.1989)). *See also Omnibank Parker Road, N.A. v. Employers Insurance of Wausau,* 961 F.2d 1521 (10th Cir.1992). The Court in *Hecla* stated that an "insurer has a duty to defend unless the insurer can establish that the allegations in

5. The Read Family and Essex Insurance Company's *Stipulated Motion For Dismissal With Prejudice* does not affect the claims between Essex Insurance Company, on the one hand, and Williams Street Center and Rick E. Mohnssen on the other. As a result of the stipulated motion, where the Court refers to "Defendants" it is referring to the latter two defendants only.

the complaint are solely and entirely within the exclusions in the insurance policy.... An insurer is not excused from its duty to defend unless there is no factual or legal basis on which the insurer might eventually be held liable to indemnify the insured." *Hecla Mining Co.*, 811 P.2d at 1090 (citations omitted).

### B. This Insurance Policy

■ Plaintiff has cited numerous cases determining that an assault and battery exclusion either identical to the one in the instant policy or very similar to it applied so as to exclude coverage under like circumstances. In *Essex Insurance Co. v. Yi*, for example, 795 F.Supp. 319 (N.D.Cal.1992), the Court found that the same exclusionary language denied coverage for negligence resulting in the assault and battery of a patron by an employee of a video arcade. In that case, the underlying causes of action included both intentional tort and negligence. The Court noted that the policy excluded coverage "not only for damages arising from assault and battery but also for damages arising from 'any act or omission in connection of [sic] the prevention or suppression of such acts.'" *Id.* at 322. Additionally, the Court noted that the exclusionary clause "reaches an assault and battery by 'any person,' not only the insureds and their employees". *Id. See also Stiglich v. Tracks, D.C., Inc.*, 721 F.Supp. 1386 (D.D.C.1989); *St. Paul Surplus Lines Ins. Co. v. 1401 Dixon's, Inc.*, 582 F.Supp. 865 (E.D.Pa.1984).

Defendants assert that the deletion of the "Hiring/Supervision" clause obligates Essex to provide insurance for the claim of negligent supervision. The assault and battery exclusionary clause, found in the Special Provisions Endorsement, was unaltered by the deletion of Form ESX–63 (10/86) containing the "Hiring/Supervision" exclusion. Defendants omit an examination of the language in the "Assault and Battery" exclusion which includes "any act or omission in connection with the prevention or suppression of such acts" of assault and battery. Defendants cite various allegations contained in the underlying state action which charge Williams Street Center and Mohnssen with, in effect, failing

to prevent Staley from committing the assault and battery leading to the death of Robert Read.

In *Martinez v. Hawkeye–Security Insurance Co.*, 195 Colo. 184, 576 P.2d 1017, 1019 (1978), the Colorado Supreme Court stated that "[a]n insurance policy and endorsement attached to it must be considered as a single instrument, and they should be construed together in the absence of an internal conflict which cannot be reconciled. The endorsement, being the last expression of intent, prevails if the language of the two conflict." (Cited in *Simon v. Shelter General Ins. Co.*, 842 P.2d 236, 241 (Colo.1992)). The question arises whether the endorsement (later canceled) for the "Hiring/Supervision" exclusion conflicts with the "Assault and Battery" exclusion. The deletion of the endorsement took place two months after the execution of the contract and Defendants contend this indicates the intent of the parties to expressly provide such coverage. The Court is not persuaded, however, by Defendants' arguments that the provisions conflict. The "Hiring/Supervision" exclusion was deleted from the policy, effective on the date the policy was issued. As such, it is not in effect and cannot be said to conflict with another provision which remains in force. The Court is also not persuaded that the intent of the parties is made clear by the fact of deletion of the endorsement. The parties' intent could also have been to delete what they considered a duplicitous provision, relying on the "Assault and Battery" exclusion already in place. Or, they could have intended to delete a provision which was thought to conflict with the "Professional Liability" provision. Any determination of the parties' intent with regard to the deletion of the "Hiring/Supervision" exclusion calls for speculation.

On the other hand, an examination of the whole of the remainder of the policy, and an application of it to the underlying claims in the state case, reveals that the "Assault and Battery" exclusion conflicts with the "Professional Liability" coverage provided. The Court is persuaded that the "Assault and Battery" exclusion covers acts of negligence regarding the prevention or suppression of

such acts, as the language of that exclusion clearly states. The "Professional Liability" provision is broader, and covers damages "arising out of any negligent act, error or omission in rendering or failing to render professional services" relating to the operation of the halfway house. Defendants state that it was the negligent rendering of "professional halfway house services" which lead to Staley's escape and his ability to kill Robert Read. The "Professional Liability" portion of the policy covers such acts of negligence as would arise under the circumstances of operating a halfway house for ex-offenders, including the failure to provide appropriate supervision over its residents. Plaintiff admits that this provision extends to claims of negligent supervision resulting in bodily injury. Thus, the broad coverage provided in the "Professional Liability" portion conflicts with the narrower "Assault and Battery" exclusion. Plaintiff's argument that the "Assault and Battery" exclusion simply precludes coverage for this particular sort of negligent supervision-leading-to-bodily-injury claim fails to clarify this conflict.

Having found that the "Professional Liability" portion of the policy and the "Assault and Battery" exclusion provision conflict, the Court finds that the policy is ambiguous. A reasonable person of average intelligence could not be sure, reading these two provisions together, whether or not these particular claims relating to negligence leading to assault and battery were covered. Accordingly, under principles of insurance contract interpretation, this ambiguity must be construed in favor of coverage. *See Omnibank Parker Road, N.A.*, 961 F.2d at 1523 ("[A]mbiguous provisions are to be construed against the drafter and in favor of providing coverage.").

### C. Attorneys' Fees

Defendants also contend that they are entitled to attorneys' fees for their defense in the underlying action. They contend that the policy's provision that "[t]he Company [Essex] will defend any suit against the IN-SURED seeking DAMAGES to which this insurance applies" entitles them to such fees. *Policy at 26.* Plaintiff agrees that if Defendants prevail on their *Motion For Summary Judgment* and establish an entitlement to coverage, Plaintiff would be unable to exercise any right it has reserved to impose the costs of the state case defense on the insureds. Defendants also contend that they are entitled to attorneys' fees in the instant declaratory judgment action. Again, Plaintiff does not disagree that if Defendants prevail on their *Motion For Summary Judgment* they would be entitled to reasonable attorneys' fees incurred in defending Plaintiff's declaratory judgment action. *See, e.g., American Casualty Co. v. Glaskin*, 805 F.Supp. 866, 871 (D.Colo.1992); *Allstate Insurance Co. v. Robins,* 42 Colo.App. 539, 597 P.2d 1052 (1979). Therefore, as the Court is granting Defendants' motion and finds that Defendants are entitled to coverage, Defendants are also entitled to reasonable attorneys' fees for the defense both of the underlying state court action[6] and the present declaratory judgment action.

### V. ORDER

Accordingly, it is ORDERED that:

(1) Plaintiff's *Motion For Partial Summary Judgment* is DENIED;

(2) Defendants' Williams Street Center and Rick E. Mohnssen's *Motion For Summary Judgment* is GRANTED;

(3) The Court finds that Plaintiff is liable for defending and indemnifying Defendants in Case No. 91–CV–7786 and for attorneys' fees in that action and attorneys' fees and costs in the present action;

(4) Plaintiff and the Read Family Defendants' *Stipulated Motion For Dismissal With Prejudice (Of Essex' Claims Against Darlene Read, Her Children, And Betty Read Behrns Only )* is GRANTED;

(5) Plaintiff's claims against the Read Family, as stated in its *Amended Complaint*, are DISMISSED WITH PREJUDICE, and

---

6. As Plaintiff has borne the costs of defending the underlying state court action, this finding relates only to Plaintiff's right to seek reimbursement for costs incurred rather than Defendants' right of recovery.

each of these parties is to bear its own costs and attorneys' fees; and

(6) Defendants shall file affidavits regarding attorneys' fees **on or before March 18, 1994.**